# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| STAINLESS SKILLZ, an Idaho Limited Liability Company,<br><br>    Plaintiff,<br><br>    vs.<br><br>MINIDOKA COUNTY SHERIFF, MINIDOKA COUNTY PROSECUTOR, PROSECUTOR LANCE STEVENSON, in his official and individual capacity, DETECTIVE LENDON MOSS, in his official and individual capacity, and DEPUTY KEVIN COGGINS, in his official and individual capacity,<br><br>    Defendants. | Case No.  4:23-cv-00390-REP<br><br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pending before the Court is Defendants' Motion for Partial Summary Judgment (Dkt. 20).  All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Dkt. 11.)  For the reasons stated below, the Court grant will grant the motion in part and deny the motion in part.

## BACKGROUND

This § 1983 lawsuit arises from Defendant Minidoka County Sheriff's search of Plaintiff Stainless Skillz's business for stolen property.  During the search, officers seized numerous tools that they believed had been stolen.  The officers immediately released these items to the alleged owner at the scene of the search without providing Plaintiff any notice or opportunity to contest the transfer of the property.  This lawsuit followed.

**MEMORANDUM DECISION AND ORDER – 1**

**A. The Search of Plaintiff's Business**

Plaintiff Stainless Skillz is a limited liability company that provides welding services and teaches welding classes. Ds' MF ¶ 1 (Dkt. 20-2) and Compl. ¶ 14 (Dkt. 1). Plaintiff has two members: Jeffrey Thueson and Travis Ganoe. Ds' MF ¶ 2 (Dkt. 20-2). At all times relevant to this case, Plaintiff operated its business out of a storage unit at Paul Storage in Paul, Idaho. Compl. ¶ 15 (Dkt. 1).

On Friday January 14, 2022, the manager of the storage company – Derek Thomas – entered Plaintiff's unit to lock Plaintiff out for nonpayment of rent.[1] 1/23/2022 PC Aff. ¶ 4 (Dkt. 23-3). While Thomas was inside, he noticed a welding device, a welder, with a Southern Field Welding ("SFW") stamp. *Id.* ¶ 6. Thomas took a photograph of the welder and its serial number. *Id.* Armed with this information, Thomas called SFW. According to Thomas, SFW told him they did not sell their old welders and that they had an invoice for the purchase of the welder located in Plaintiff's unit. *Id.*

Thomas called and reported his amateur investigation to the Minidoka County Sheriff's office. *Id.* ¶¶ 4, 8. The case was assigned to Minidoka County Sheriff's office Deputy Kevin Coggins. *Id.* ¶ 4. After speaking with Thomas, Deputy Coggins obtained a search warrant to enter Plaintiff's storage unit and search for stolen items. *Id.* ¶ 8; *see also* Search Warrant Aff. (Dkt. 20-3).

That same evening, at 8:17 p.m., Deputy Coggins and other Minidoka County Sheriff's officers executed the warrant. 1/23/2022 PC Aff. ¶¶ 9-12 (Dkt. 23-3). When the officers entered the unit, they found multiple tools with SFW stamps. *Id.* ¶ 13. To help identify the property,

---

[1] While it is not relevant for the purposes of this case, Plaintiff claims that it was current on rent and disputes the legitimacy of the lock out. Pl.'s MF ¶ 1 (Dkt. 23-1).

**MEMORANDUM DECISION AND ORDER – 2**

Deputy Coggins called the owner of SFW, Michael Justesen, and invited him to come to the storage unit.  *Id.*  Justesen accepted this invitation and, after arriving on the scene, identified multiple welders, tools, and other equipment in Plaintiff's storage unit as the property of SFW. *Id.* ¶¶ 14, 17.  Deputy Coggins photographed all the items that Justesen identified as SFW property and placed the items onto an inventory list.  *Id.* ¶ 14.

### B.  The Release of the Seized Property

Under Idaho law, "[w]hen property, alleged to have been stolen or embezzled, comes into the custody of a peace officer, he must hold it subject to the order of the magistrate authorized by the next section to direct the disposal thereof."  I.C. § 19-3801.  The Minidoka County Sheriff's office did not comply with this directive.  Rather than bring the allegedly stolen items back to the evidence room or pay for alternative storage, Deputy Coggins released the property to Justesen at the scene of the search.  1/23/2022 PC Aff. ¶ 18 (Dkt. 23-3) and Ds' MF ¶¶ 19-20 (Dkt. 20-2).

To document the transfer, someone from the Minidoka County Sheriff's office prepared a receipt, which was signed by Justesen and one of Minidoka County's property custodians, Detective Lendon Moss.  Ds' MF ¶¶ 20 (Dkt. 20-2); *see also* Justesen Receipt (Dkt. 20-4). Notably, the form was stamped "Released per order of Prosecutor L. Stevenson," even though the prosecutor had not been contacted and was not involved in the decision to release the property.  Justesen Receipt (Dkt. 20-4) and Stevenson Decl. ¶¶ 4-5 (Dkt. 20-4).  Deputy Coggins left a copy of the warrant and inventory list inside the locked storage unit and left for the night. 1/23/2022 PC Aff. ¶ 20 (Dkt. 23-3).

A few days later, on January 18, 2022, Justesen returned two items – a welder and a grinder – that he had taken the night of the search, but which did not to belong to SFW.  *Id.* ¶¶

**MEMORANDUM DECISION AND ORDER – 3**

22-23 and Ds' MF ¶ 22 (Dkt. 20-2).  Deputy Coggins logged both items into evidence.

1/23/2022 PC Aff. ¶ 22-23 (Dkt. 23-3).

### C. The Conclusion of the Criminal Investigation

In the week following the search, Deputy Coggins interviewed Plaintiff's owners,

Thueson and Ganoe.  *Id.* ¶¶ 25-44.  They both claimed that they had purchased the tools found at

their business from Norco, SFW, and yard or estate sales.  *Id.*  Thueson acknowledged working

for SFW before starting his own welding school and shop, but denied stealing anything from

SFW.  *Id.* ¶¶ 37, 39, 41.  He explained that he had purchased a welder from SFW while working

there and that the cost was deducted from his paycheck.  *Id.* ¶ 39.  He also claimed that a

manager at SFW gave him some old grinders that were on the way to the dumpster, and he

repaired them.  *Id.*

After these interviews, Deputy Coggins spoke with Justesen and the executive assistant

for SFW.  *Id.* ¶¶ 47-49.  They confirmed that Thueson had purchased tools from them, by having

money withdrawn from his paycheck.  But Justesen denied selling welders to employees and

claims SFW never threw old tools out.  *Id.*

At this point, Deputy Coggins submitted his findings to the Minidoka County

Prosecutor's office to determine whether charges were warranted.  Ds' MF ¶ 26 (Dkt. 20-2).  On

September 1, 2022, Minidoka County Prosecutor Lance Stevenson declined to file charges

against either Thueson or Ganoe.  *Id.* ¶ 27.

### <u>SUMMARY JUDGMENT STANDARD</u>

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case, and a dispute

**MEMORANDUM DECISION AND ORDER – 4**

about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

"The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on

which the jury could reasonably find for the [nonmoving party]." *Id*. at 252.

In deciding whether there is a genuine dispute of material fact, the Court must view the

facts in the light most favorable to the nonmoving party. *Id*. at 255; *Devereaux v. Abbey*, 263

F.3d 1070, 1074 (9th Cir. 2001) ("Viewing evidence in the light most favorable to the

nonmoving party, we must determine whether there any genuine issues of material fact and

whether the district court correctly applied the relevant substantive law.") (citing *Lopez v. Smith*,

203 F.3d 1122, 1131 (9th Cir. 2000)).  The court is prohibited from weighing the evidence or

resolving disputed issues in the moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657

(2014).

## QUALIFIED IMMUNITY

Qualified immunity shields law enforcement officials from liability for harm caused by

reasonable mistakes, protecting all but the "plainly incompetent or those who knowingly violate

the law." *Easley v. City of Riverside*, 890 F.3d 851, 856 (quoting *Ashcroft v. al-Kidd*, 563 U.S.

731, 743 (2011)).  The qualified immunity inquiry involves two steps.  When a defendant asserts

qualified immunity, the Court must evaluate: (1) whether the defendant violated a constitutional

right, and (2) whether the constitutional right was clearly established at the time of the

defendant's conduct, i.e., whether the contours of the right were sufficiently well developed that

a reasonable official should have known his conduct was unlawful. *Id*.  Unless the answer to

both questions is "yes," the defendant is entitled to immunity. *Id*.

MEMORANDUM DECISION AND ORDER – 5

In conducting this inquiry, the Court adopts the plaintiff's version of the facts. *Tolan*, 572 U.S. at 655-656; *Easley*, 890 F.3d at 856 (evaluating a qualified immunity summary judgment motion by drawing factual inferences in the light most favorable to the plaintiff, the nonmoving party).

The Court maintains the discretion to address either prong of the qualified immunity analysis first. *Easley*, 890 F.3d at 856.

## DISCUSSION

A. The Validity of the Warrant

The first claim Plaintiff raises in the briefing is that the search of its storage unit was unlawful because the search warrant was unconstitutionally broad and did not describe the items to be seized with sufficient particularity. Pl.'s Rsp. at 3-9 (Dkt. 23). While Plaintiff raises legitimate concerns, the complaint does not challenge the validity of the warrant. This is fatal to Plaintiff's particularity and overbreadth claims.

As the Ninth Circuit has repeatedly warned, summary judgment is not a vehicle to expand the pleadings, and courts generally refuse to grant or deny summary judgment based on unpled theories or claims. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (a plaintiff may not amend the pleadings by raising a new legal theory on a motion for summary judgment) and *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (where "the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"), o*verruled on other grounds by Apache Stronghold v. United States*, 101 F.4th 1036, 1043 (9th Cir. 2024) (en banc). To obtain relief on a claim, that claim must be properly alleged in the complaint.

**MEMORANDUM DECISION AND ORDER – 6**

Here, the only theory Plaintiff alleges in the complaint to support its unreasonable search claim is that Defendants failed to comply with Idaho law in the *execution* of the search warrant. *See* Compl. ¶¶ 46-52 (Dkt. 1) (alleging that Defendants "failed to comply with Idaho law in the execution of the search warrant, including but not limited to, failing to deliver the seized items to the court until such time as their ownership could be determined"). The complaint contains no factual allegations supporting a challenge to the *validity* of the warrant. At oral argument, Plaintiff's counsel acknowledged that she had not "dug into" these issues prior to preparing her response to Defendants' summary judgment motion. She argued, however, that Paragraph 50's reference to an "unlawful search" and the titling of Count One as an "unreasonable search" claim "implied that there could be a warrant issue as part of Plaintiff's claims."

This argument does not hold water. Plaintiff's challenge to the manner in which Defendants executed the search warrant *is* an unreasonable search claim. Defendants had no way of knowing that Plaintiff intended to bring a second unreasonable search claim – attacking the validity of the warrant – under the same Count. Even if Defendants had intuited the *possibility* that Plaintiff may later seek to raise such a claim, that would not suffice. To comply with notice pleading requirements, a claim must consist of more than boilerplate; it must include "the necessary factual allegations to state a claim." *Navajo Nation*, 535 F.3d at 1080; *see also Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (where the complaint provided "no notice of the *specific* factual allegations presented for the first time in . . . opposition to summary judgment," these claims were not adequately pled) (emphasis added). Plaintiff's complaint, however, lacks any allegations attacking the particularity, overbreadth, or validity of the warrant.

**MEMORANDUM DECISION AND ORDER – 7**

Too add such claims for the first time at summary judgment, Plaintiff would need to establish good cause to amend the complaint. *See Tinian Women Ass'n v. United States Dep;t of the Navy*, 976 F.3d 832, 841 (9th Cir. 2020) and *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992). Plaintiff has not made that showing. The Court, accordingly, will not entertain Plaintiff's challenges to the validity of the warrant.

B.  <u>The Presence of Mr. Justesen at the Scene of the Search</u>

A search or seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes on interests that are protected by the Constitution. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *see also San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) ("An officer's conduct in executing a search is subject to the Fourth Amendment's mandate of reasonableness from the moment of the officer's entry until the moment of departure."). In its response brief, Plaintiff complains that Deputy Coggins invited Mr. Justesen to Plaintiff's storage unit to assist with the search. Pl.'s Rsp. at 12 (Dkt. 23). It is not clear to the Court whether Plaintiff is alleging that Mr. Justesen's involvement in the search violated the Fourth Amendment. To the extent Plaintiff is making this argument, it is unpersuasive.

In *Wilson v. Layne*, 526 U.S. 603 (1999), the Supreme Court held that "it is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home was not in aid of the execution of the warrant." *Id.* at 614. *Wilson* prohibits officers from inviting extraneous third parties onto the scene of a search for reasons that are unrelated to the lawful purpose of the search. *Id.* at 611 (the Fourth Amendment requires "that police actions in execution of a warrant be related to the objectives of the authorized intrusion"). But that is not what happened here. Deputy Coggins invited Mr. Justesen to the search to help officers fulfill

**MEMORANDUM DECISION AND ORDER – 8**

the warrant's directives – identifying and seizing allegedly stolen property.  Such assistance is permissible under the Fourth Amendment.  *See United States v. Wright*, 667 F.2d 793, 797 (9th Cir. 1982) (rejecting a claim that ATF officers violated a suspect's Fourth Amendment rights when they invited a state drug officer to aid in the execution of a federal search warrant) and *Advanced Bldg. & Fabrication, Inc. v. Cal. Highway Patrol*, 918 F.3d 654, 659-660 (9th Cir. 2019) (whether a third party's presence at the scene of a search complies with the Fourth Amendment depends on whether the individual's involvement in the search is "related to the objectives of the authorized intrusion").

To the extent Plaintiff is alleging that Mr. Justesen's presence during the search violated the Fourth Amendment, this claim cannot survive summary judgment.

## C.  The Disposal of Plaintiff's Property

Plaintiff's remaining federal claims focus on the release of Plaintiff's property.  As Plaintiff points out, Defendants acted contrary to Idaho law when they immediately released the property seized from Plaintiff's storage unit to a third-party without court authorization.  *See* I.C. § 19-3801 ("When property, alleged to have been stolen or embezzled, comes into the custody of a peace officer, he must hold it subject to the order of the magistrate authorized by the next section to direct the disposal thereof.")[2]  In the complaint, Plaintiff asserts that this conduct violated Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights.  *See* Compl. ¶¶ 46-67 (Dkt.

---

[2] At the motion hearing, Defense counsel suggested that the Defendants' conduct did not violate the law because the law contains a "gap" regarding the storage of large items.  This argument is too little, too late.  First, Defendants waived this argument by failing to raise it in the briefing. *See Recycle for Change v. City of Oakland*, 856 F.3d 666, 673 (9th Cir. 2017).  Second, it is an unpersuasive argument.  The law does not contain an exception for large items.  All stolen items must be held until their release is authorized by the Court.  I.C. § 19-3801.  The Court agrees with Defendants that this does not always require the item to be stored in an evidence locker. But here, Defendants did absolutely nothing to "hold" the property seized from Plaintiff's storage locker.  They released it to a third-party without any restrictions on that party's ability to sell, alienate, or otherwise dispose of the property before Plaintiff knew of the transfer.

1).  Plaintiff, however, has recently withdrawn its Fifth Amendment Takings Clause claim.  Pl.'s Rsp. at 13 (Dkt. 23).  This leaves Plaintiff with two § 1983 claims related to the loss of its business property.  Both are addressed below.

i.    *Plaintiff's Fourth Amendment Challenge*

The Fourth Amendment protects against unreasonable seizures.  U.S. CONST. amend IV. Normally, to establish that a governmental seizure of property has violated the Fourth Amendment, a civil rights plaintiff must show (i) the defendant took possession or control of the property in a manner that meaningfully interfered with the plaintiff's possessory interest in the property, (ii) the defendant acted intentionally, and (iii) the defendant's seizure of the property was "unreasonable" based on a careful balancing of governmental and private interests.  *See Brower v. Cty. of Inyo*, 489 U.S. 593, 596, 599 (1989) (to prevail on a § 1983 Fourth Amendment claim, the plaintiff must establish a seizure, that the seizure occurred as the result of "an intentional acquisition of physical control," and that the seizure was unreasonable); *see also* Ninth Circuit Pattern Civil Jury Instruction 9.18 (setting forth the three elements of a Fourth Amendment seizure claim).

Defendants do not contest Plaintiff's ability to satisfy any of these elements.  Instead, Defendants argue that Plaintiff's Fourth Amendment claim fails on temporal grounds.  As Defendants see it, once property is lawfully seized, the Fourth Amendment's protections against "unreasonable seizures" cease.  Ds' Suppl. at 2-5 (Dkt. 35).  What officers do with the property thereafter – whether they indefinitely detain it, steal it, destroy it, or, as here, give it to a third-party – is governed solely by state law and the federal Constitution's due process protections, not the Fourth Amendment.  *Id.*  Numerous courts outside the Ninth Circuit have been receptive to this position.  *See, e.g.*, *Denault v. Ahern*, 857 F.3d 76, 84 (1st Cir. 2017); *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003); and *Fox v. Van Oosterum*, 176 F.3d 342, 350 (6th

**MEMORANDUM DECISION AND ORDER – 10**

Cir. 1999).  The problem – for Defendants – is that the Ninth Circuit has rejected this reading of the term "seizure."

In *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017), the Ninth Circuit addressed the application of the Fourth Amendment to the retention of lawfully seized property.  *Id.* at 1195-1196.  *Brewster* involved a California law that required vehicles seized from drivers with suspended licenses to be impounded for a minimum of 30 days.  *Id.* at 1195.  The plaintiff conceded that officers lawfully seized her vehicle under the community caretaking exception to the Fourth Amendment, while it was being driven by a family member, but argued that that government's refusal to release the vehicle back to her until the 30-day impound period had expired violated the Fourth Amendment's prohibition against unreasonable seizures.  *Id.* at 1195-1196.

As part of its consideration of this claim, *Brewster* raised, discussed, and rejected the same arguments that Defendants advance here.  *Id.* at 1196-1197 (summarizing and disagreeing with the Seventh Circuit's decision in *Lee*).  And its holding leaves no wiggle room; *Brewster* held, in no uncertain terms, that "[t]he Fourth Amendment doesn't become irrelevant once an initial seizure has run its course."  *Id.* at 1197.  A "delay in returning" validly seized property, consequently, can give rise to a Fourth Amendment claim.  *Id.*

*Brewster's* conclusion aligns with earlier Ninth Circuit law.  While *Brewster* appears to be the first time the Ninth Circuit *expressly* discussed the temporal scope of the Fourth Amendment, it is not the first Ninth Circuit case to apply the Fourth Amendment to a dispute over law enforcement's handling of property after its initial seizure.  In *Lavan v. City of L.A.*, 693 F.3d 1022 (9th Cir. 2012), for example, a group of homeless plaintiffs challenged the police department's seizure and destruction of property that the plaintiffs had left unattended on public

**MEMORANDUM DECISION AND ORDER – 11**

sidewalks. *Id.* at 1024. The Ninth Circuit recognized that the initial seizure of the unattended property may have been reasonable had the "City held [the property] for return to its owner instead of immediately destroying it." *Id.* at 1030. Because a seizure that is lawful "at its inception" can "nevertheless" become unreasonable, however, the Ninth Circuit concluded that the Fourth Amendment prohibited the police from summarily destroying the property without providing the plaintiffs with any notice or an opportunity to be heard. *Id.* (citing *United States v. Jacobsen*, 466 U.S. 109, at 124-125 (1984)).

The Ninth Circuit allowed a similar claim to proceed in *G & G Jewelry, Inc. v. Oakland*, 989 F.2d 1093 (9th Cir. 1993). Like the present case, *G & G Jewelry* involved Fourth Amendment and due process challenges to the seizure and subsequent release of allegedly stolen property. *Id.* at 1194. The Ninth Circuit held that the officer's plain view seizure of the property for investigatory purposes was permitted under the Fourth Amendment. *Id.* at 1101. The Court found, however, that the plain view doctrine did "not authorize police to seize property for the purpose of turning it over to the person claiming that the property was stolen from him." *Id.* Because there was genuine dispute about the purpose for which the officer seized the property, the Court reversed summary judgment and remanded the case for further proceedings. *Id.* at 1102.

Taken together, these cases foreclose Defendants' temporally restrictive understanding the Fourth Amendment. *Astorga v. Cnty. of Los Angeles*, No. 2:20-CV-09805-AB-AGR, 2024 WL 3313747, at *6 (C.D. Cal. May 28, 2024) (in the Ninth Circuit, the Fourth Amendment protects a plaintiff's "interests in possessing property that has been validly seized").

Even if the law in this circuit was less settled, however, the Court would reach the same conclusion. First, the Court has read the cases Defendants cite and finds the decision in *Asinor v.*

**MEMORANDUM DECISION AND ORDER – 12**

*District of Columbia*, 111 F.4th 1249 (D.C. Cir. 2024) more persuasive than the contrary authority from other circuits. *Id.* at 1261 (holding that Fourth Amendment protections endure over time). Second, and more importantly, the Supreme Court has repeatedly recognized that a Fourth Amendment seizure can be an ongoing event, with multiple points of intrusion. *See Jacobsen*, 466 U.S. at 124-125 (the government's testing of lawfully seized cocaine was a seizure under the Fourth Amendment because the testing "converted what had been only a temporary deprivation of possessory interests into a permanent one") and *Manuel v. City of Joliet*, 580 U.S. 357, 360 (2017) (the Fourth Amendment governed the entirety of the plaintiff's 48-day pretrial detention). Under these cases, a Fourth Amendment "seizure" encompasses more than the moment when police first take physical possession of an individual's property.

This remains true whether the initial seizure is conducted pursuant to a warrant, as was the case here, or under a recognized exception to the warrant requirement, as was the case in *Brewster*, *Lavan*, *Jacobsen*, and *Asinor*. *See Manuel*, 580 U.S. at 360 (rejecting the position that "[o]nce a person is detained pursuant to legal process," the Fourth Amendment "falls out of the picture and the detainee's claim that the detention is improper becomes one of due process") (cleaned up). In *Manuel*, for example, the Supreme Court held that a Fourth Amendment seizure lasts throughout the period of pretrial detention, including the period after the judge's probable cause determination. *Id.* [3]

---

[3] While *Manuel* involved the seizure of a person, the text of the Fourth Amendment extends equivalent protections to items of personal property. *See* U.S. CONST. amend IV (using the word seizure once); *see also Asinor*, 111 F.4th at 1256 ("Neither text, grammar, nor history suggest that seizures are ongoing events when directed at 'persons' but mere snapshots when directed at 'houses, papers, and effects.'").

**MEMORANDUM DECISION AND ORDER – 13**

The same reasoning applies here.  Just because a warrant was issued, the Fourth Amendment does not become irrelevant.  The proper question is whether the warrant has rendered the challenged conduct reasonable.  In *Manuel*, the judge's probable cause determination could not render the detention reasonable because it rested on "police fabrications" and "therefore lacked any proper basis."  *Manuel*, 580 U.S. at 368-369.  The warrant at issue here does not suffer from similar defects.  Its validity, however, provides little shelter to Defendants.  The warrant permitted Defendants to seize certain property as "contraband or evidence of criminal activity."  *See* Search Warrant (Dkt. 20-3, pp. 11-12).  It did not authorize officers to release the seized property to a third-party, without a court order, in violation of Idaho law.  *Id.*  The reasonableness of this decision must rise or fall on its own laurels.

Here, Defendants have made no argument that the release of the property could be considered reasonable, and the Court does not believe such an argument would be successful given (i) the plain language of I.C. § 19-3801 and (ii) the existence of binding Ninth Circuit law giving Plaintiff a procedural due process right to a hearing before the release of its property.  *See Sanders v. City of San Diego*, 93 F.3d 1423, 1429 (9th Cir. 1996) (recognizing that a pawnshop owner had a due process right to a hearing before allegedly stolen property that was seized from his pawnshop was returned to the putative owner at the conclusion of a criminal case).  The Court, accordingly, rejects Defendants' request for summary judgment on the merits of Plaintiff's Fourth Amendment seizure claim.

       *ii.*    *Qualified Immunity*

The individual defendants assert qualified immunity as a defense to Plaintiff's Fourth Amendment claim.  Qualified immunity shields officers from civil liability unless every reasonable officer in the defendant's position would have understood that his behavior violated the right at issue.  *Perez v. City of Fresno*, 98 F.4th 919, 924 (9th Cir. 2024).  While this does not

**MEMORANDUM DECISION AND ORDER – 14**

require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

If the Court was writing on a blank slate, it might be inclined to conclude that *Brewster*, *Lavan*, and *G & G Jewelry* provided adequate notice of the unconstitutionality of Defendants' conduct. *Polanco v. Diaz*, 76 F.4th 918, 930 n.8 (9th Cir. 2023) ("[w]e routinely rely on the intersection of multiple cases when holding that a constitutional right has been clearly established."). The Ninth Circuit, however, has taken a different tack.

In *Jessop v. City of Fresno*, 936 F.3d 937, the Ninth Circuit considered a qualified immunity defense in a case where the officer-defendants allegedly stole the plaintiffs' property during the execution of a search warrant. *Id.* at 939. The Ninth Circuit conceded that *Brewster* "suggest[ed]" that the Fourth Amendment applied to the alleged theft. *Id.* at 941. But it ruled that the law in this area was not clearly established. It gave two, independent reasons for this ruling. First, the court found that *Brewster* was distinguishable because it involved an exception to the warrant requirement, whereas in *Jessop* the officers seized the allegedly stolen property pursuant to a valid warrant. *Id.* at 941-942. Second, even if *Brewster* was controlling, the Court found that it was irrelevant because it had not been published until after the alleged theft. *Id.* at 942.

*Jessop's* first holding controls the outcome here.[4] Like in *Jessop*, Plaintiff is challenging the manner in which officers handled property that was seized under a valid search warrant. *Jessop* held that it would not be "clear to a reasonable officer" that the misappropriation of such property violates the Fourth Amendment, which only governs unreasonable "searches and

---

[4] *Jessop's* second holding is inapplicable. *Brewster* was published well before the 2022 search of Plaintiff's storage unit.

**MEMORANDUM DECISION AND ORDER – 15**

seizures" not all government misconduct.  *Id.* at 942.  While this holding is hard to reconcile with *Brewster*, *Lavan*, and *Manuel*, it is binding.  *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court.").  Plaintiff does not cite, and the Court is not aware of, any intervening authority that would justify this Court in finding that the law in this area has become settled since *Jessop*.  The Court, accordingly, grants the individual Defendants qualified immunity and will dismiss Plaintiff's Fourth Amendment claims as asserted against them.

### iii.    *Plaintiff's Due Process Claim*

In addition to alleging a Fourth Amendment violation, Count Two of Plaintiff's complaint alleges that Defendants violated Plaintiff's procedural due process rights when they released Plaintiff's property to the owner of SFW.  *See* Compl. ¶ 54 (Dkt. 1).  Neither party addresses this claim in the briefing.  Any arguments for its dismissal are not properly before the Court and the claim will proceed to trial.

### D.  Municipal Liability

Municipalities do not "do not enjoy immunity from suit—either absolute or qualified—under § 1983."  *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1250 (9th Cir. 2016).  Plaintiff's official capacity claims, consequently, can proceed to trial so long as Plaintiff can establish that the County Sheriff's office bears direct liability for the premature disposal of Plaintiff's property.  This is not an easy bar.  Section 1983 does not permit vicarious liability against governmental agencies.  To impose liability on a municipality, often called *Monell* liability after *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that it was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounts to deliberate

**MEMORANDUM DECISION AND ORDER – 16**

indifference to its constitutional right; and (4) the policy is the moving force behind the constitutional violation. *Gordon v. Cty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021).

For the purposes of *Monell* liability, policy is defined broadly. A plaintiff can show the existence of "policy" in one of three ways: (i) a local government may be held liable when it acts pursuant to an expressly adopted official policy, (ii) a public entity may be held liable for a "longstanding practice or custom," including in some circumstances where the entity fails to train its employees adequately, and (iii) a local government may be held liable under § 1983 when "the individual who committed the constitutional tort was an official with final policy-making authority" or such an official "ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* Here, Defendants' conduct violated Idaho law and Idaho policing policy. *See* I.C. § 19-3801 and Idaho Policing Policy Manual at 89 (Dkt. 23-5). To proceed with its *Monell* claim, therefore, Plaintiff must establish a countervailing "policy" using one of the alternative methods listed above. Plaintiff offers three theories of relief: ratification, a long-standing practice or custom, and inadequate training. The first of these theories – ratification – is not viable, but the latter two are.

### i. Ratification

Plaintiff argues that the County can be held liable for the unlawful disposal of its property because the decision to release its property was ratified by Chief Deputy Kindig. The only evidence, however, that Plaintiff presents to show that Deputy Kindig was a "final policymaker" whose decisions could give rise to *Monell* liability is testimony from the County Sheriff identifying Deputy Kindig as one of three people in the Sheriff's office with "policy-making authority." This is legally insufficient.

The phrase "final policymaker" is a term of art. To be a final policymaker, it is not enough to have input into policy decisions or discretion to act on the county's behalf. "The

**MEMORANDUM DECISION AND ORDER – 17**

official in question must possess final authority [under state law] to establish municipal policy

with respect to the challenged action." *Christie v. Iopa*, 176 F.3d 1231, 1236 (9th Cir. 1999).  A

sheriff or a fire chief, for example, may possess discretion to hire and fire employees without

being the official responsible for establishing county employment policy.  *Gillette v. Delmore*,

979 F.2d 1342, 1349 (9th Cir. 1992).  Similarly, supervisors within a sheriff's department may

engage in discretionary day-to-day acts without being considered final policymakers over law

enforcement policies.  *McClain v. Cnty. of San Bernardino,* No. 18-cv-1648, 2020 WL 1988261,

at *9 (C.D. Cal. Mar. 5, 2020), report and recommendation adopted, 2020 WL 1970516 (C.D.

Cal. Apr. 24, 2020).

Plaintiff has not identified any state law giving Chief Deputy Kindig the requisite level of

authority over policing policy to be considered a final policymaker.  Such authority presumably

rests with the County Sheriff.  *See* Ds' Suppl. at 6 (Dkt. 35) (identifying Sheriff Pinther as the

supervisor with final policymaking authority).

While it is theoretically possible that the Sheriff could have delegated final policymaking

authority to Chief Deputy Kindig, Plaintiff has not presented any evidence or argument to

support such a theory.  To differentiate between the delegation of discretion, which does not give

rise to *Monell* liability, and the delegation of final policymaking authority, which can form the

basis for a *Monell* claim, courts consider whether the official in question was "constrained by

policies not of that official's making" and whether the official's decision was "subject to review

by the municipality's authorized policymakers."  *Christie*, 176 F.3d at 1236.  In this case, Sheriff

Pinther testified that he discussed policy with Chief Deputy Kindig, but stressed that he (the

Sheriff) possessed "[t]he final authority to authorize that policy or not."  *See* Pinther Depo at

35:6-12 (Dkt. 34-4).  In other words, the Sheriff retained final authority review, reject, or modify

**MEMORANDUM DECISION AND ORDER – 18**

any policy decisions made by Chief Deputy Kindig.  Ninth circuit law is clear that this does not

constitute final policymaking authority.

>    ii.    *A Long-Standing Practice or Custom*

When a plaintiff alleges *Monell* liability based on a longstanding practice or custom, the

plaintiff must show that the practice or custom at issue was so persistent and widespread that it

constituted the municipality's standard operating procedure.  *Trevino v. Gates*, 99 F.3d 911, 918

(9th Cir. 1996).  Under this test, "[l]iability for improper custom may not be predicated on

isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency

and consistency that the conduct has become a traditional method of carrying out policy."  *Id.*

Determining whether a policy or custom is sufficiently pervasive to give rise to *Monell* liability

is ordinarily a question for the jury.  *Id.* at 920.

Plaintiff has presented more than sufficient evidence for a jury to find it in its favor on

this issue.  To begin, both officers involved in this case testified that it was standard practice to

immediately return allegedly stolen property to the putative owner if that property was bulky or

otherwise too large to store.  Coggins Depo. at 21:16-21 and 42:25-43:14 (Dkt. 34-2) (explaining

that it was "procedure" to return stolen vehicles and other "larger" items upon proof of

ownership) and Moss Depo. at 34:2-37:12, 50:23-51:7, 69:1-8 (Dkt. 34-3) (describing how the

Sheriff's office has "zero room for any type of storage" and calling it "procedure" to release

stolen items back to the owner).  If that was not enough, the Sheriff confirmed the existence of

this "procedure." Pinther Depo. at 18:8-21 and 37:8-23 (Dkt. 34-4).  And, Detective Moss

provided several examples of how the procedure had been employed in previous cases.  Moss

Depo. at 34:2-37:12 (Dkt. 34-3)

In short, it is undisputed that the Minidoka County Sheriff's office had an established

practice, that was well-known and approved at the highest level, of releasing allegedly stolen

**MEMORANDUM DECISION AND ORDER – 19**

property that was bulky or large without due process of law.  This is a prototypical example of a "longstanding custom or practice."

> ### iii.    Inadequate Training

Plaintiff's final theory of *Monell* liability is that the County's failure to properly train its officers gave rise to the unlawful disposal of its property.  The Court does not agree with Plaintiff that the County Sheriff's office's training procedures were inadequate on paper.  The officers received copies of the Idaho Policing Policy, which correctly outlines how to handle allegedly stolen property under Idaho law.  *See* Idaho Policing Policy Manual at 89 (Dkt. 23-5). If followed, this policy would have complied with the Fourth and Fourteenth Amendments.

In the mine-run of cases, this would preclude an inadequate training claim.  *See Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 793-794 (9th Cir. 2016) (to proceed on a failure to train claim, a plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need").  Plaintiff, however, has put forth evidence that the County Sheriff knew and approved of the office's informal practice of violating I.C. § 19-3801 (at least in large seizure cases).  *See* Pinther Depo. at 18:8-21 and 37:8-23 (Dkt. 34-4).  A reasonable jury could find that the Sheriff should have realized that this policy was unconstitutional, and that additional training was necessary to terminate the informal practice and bring the County Sheriff's office in compliance with the law.

> ### E.    Plaintiff's Claim against the County Prosecutor

Plaintiff has agreed to withdraw the claims against the County Prosecutor.  The Court will accept the concession and dismiss the claims brought against the Minidoka County Prosecutor and Prosecutor Lance Stevenson.

**MEMORANDUM DECISION AND ORDER – 20**

## **ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Defendants' Motion for Partial Summary Judgment (Dkt. 20) is GRANTED in part as follows:

    a.  Plaintiff has not adequately pled, and has therefore waived, any Fourth Amendment challenge to the validity of the warrant.

    b.  To the extent Plaintiff is bringing a Fourth Amendment challenge to Mr. Justesen's presence at the search of its business, this claim is dismissed with prejudice.

    c.  The individual defendants are entitled to qualified immunity on Plaintiff's one remaining Fourth Amendment claim, which challenges the disposal of its property.  Plaintiff's Fourth Amendment claims against the individual defendants, consequently, are dismissed with prejudice.

    d.  Plaintiff's Takings Clause claim – Count Three – is dismissed with prejudice.

    e.  Plaintiff's claim that a final policymaker ratified actions of Deputy Coggins and Detective Moss is dismissed with prejudice.

    f.  Plaintiff's claims against the Minidoka County Prosecutor and Prosecutor Lance Stevenson are dismissed with prejudice, and these defendants will be terminated from the lawsuit.

2.   Defendants' Motion for Partial Summary Judgment (Dkt. 20) is DENIED in part as follows:

**MEMORANDUM DECISION AND ORDER – 21**

a. Plaintiff's Fourth Amendment challenge to disposal of its property may proceed to trial against the Minidoka County Sheriff's office under a *Monell* theory.

b. Plaintiff's procedural due process claim may proceed to trial against Deputy Coggins and Detective Moss, as individuals, and the Minidoka County Sheriff's office, under a *Monell* theory.

DATED: January 21, 2025

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER – 22**